# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Certified Construction Company of )     ASBCA No. 58782
Kentucky, LLC )
)
Under Contract No. W9124D-06-D-0001 )

APPEARANCES FOR THE APPELLANT:     Thomas E. Roma, Jr., Esq.
G. Alan Oliver, Esq.
Ackerson & Yann, PLLC
Louisville, KY

APPEARANCES FOR THE GOVERNMENT:     Raymond M. Saunders, Esq.
Army Chief Trial Attorney
CPT Tyler L. Davidson, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE TING
## ON GOVERNMENT'S PARTIAL MOTION TO DISMISS

Certified Construction Company of Kentucky, LLC (Certified or appellant) submitted a $839,052.31 request for equitable adjustment (REA) in September 2012. After the contracting officer (CO) denied the REA, Certified submitted a claim. The CO denied the claim and Certified appealed. The government moves to dismiss a portion of appellant's claim for lack of Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, jurisdiction, arguing that it accrued six years prior to appellant's claim submission. Certified maintains that its REA was a claim and that the Board has jurisdiction over a larger portion of appellant's claim than the government asserts. We grant the government's motion and dismiss the portion of the appeal pertaining to costs incurred prior to 22 March 2007.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. Effective 20 October 2005, Fort Knox Directorate of Contracting (Army or the government) awarded Contract No. W9124D-06-D-0001 to Certified. The requirements-type contract was for concrete placement, asphalt surface treatments and pavement markings at Fort Knox, Kentucky, for a period of performance from 1 November 2005 through 31 October 2006. The contract included a one-year option period. (R4, tab 1)

2. The government exercised the first option year by Modification No. P00005 extending the contract through 31 October 2007 (R4, tab 7 at 1-2) and extended that option through 30 April 2008 by Modification No. P00009 (R4, tab 11 at 1). The government also modified the contract multiple times to adjust line item pricing (R4, tabs 8-10, 12-14). The final estimated value of the contract was $ 3,166,308.90 (R4, tabs 2, 14).

3. The contract contained Alternate I of the Disputes clause, FAR 52.233-1, DISPUTES (JUL 2002) – ALTERNATE 1 (DEC 1991).

4. During the course of performance, appellant alleges, "the cost of certain petroleum products substantially increased in a manner unanticipated at the time Appellant entered into the contract" (compl. ¶ 7). Certified sent a letter, dated 17 September 2012, to the CO with the subject line "Requirements Type Contract for Concrete and Asphalt-W9124D-06-D-0001." The letter stated:

> We are making a Request for Equitable Adjustment to this contract....
>
> During the contract we incurred additional expenses due to the extreme rise in petroleum products used in this contract. The product that had the greatest impact to our costs was Liquid Asphalt.... The CLIN's that were affected by this cost impact are 0072, 0073, 1072 and 1073. We have estimated our request using the Kentucky Transportation Cabinet, Department of Highways Standard Specifications for Road and Bridge Construction, Section 109.07.01, Price Adjustments for Liquid Asphalt. We have attached the worksheets we used in the determination of the cost impact for this request and the REA is based on the KY Asphalt Index, KAPI at the time of the contract bid, versus the KAPI at the time of production and installation.
>
> The total amount requested for the REA is listed below for the Asphalt Base and Asphalt surface items we used for the duration of the contract.
>
> ....
>
> **Total Request for Equitable Adjustment $ 839,052.31**

2

> In summary, this request is for adjustment to contract price.

(R4, tab 15 at 1-2)

5. The 17 September 2012 letter included the following certification, signed by Certified's president:

> I certify that this request is made in good faith, and that the supporting data is accurate and complete to the best of my knowledge and belief.

(R4, tab 15 at 2)

6. The 17 September 2012 letter included two calculation tables, one for each grade of asphalt used during construction: 4.8% and 5.6%. Both tables were structured similarly. For each month of contract performance, appellant compared the price of asphalt, as set by the Kentucky Average Price Index (KAPI), at the time of production and installation to the price of asphalt, as set by the KAPI, at the time of its bid, made a determination whether a price adjustment was appropriate for each respective month and calculated the alleged amount of the adjustment. For example, for the months of May and June 2006, it made the following calculations:

| MO./YEAR | PC KY ASPHALT INDEX | QUANTITY TONS T FOR PAY ITEM FOR MONTH 1st TO End of Month | A % ASPHALT | PL PRICE INDEX AT LETTING | C % CHANGE IN INDEX PLUS/MINUS 5% | T*A/100*PL*(C-5) ADJUSTMENT |
|---|---|---|---|---|---|---|
| May-06 | 312.7 | | 4.8% | $220.63 | 36.730% | NO ADJ |
| Jun-06 | 355.2 | 1993.130 | 4.8% | $220.63 | 55.990% | $11,818.22 |

The tables include calculations for every month from January 2006 through December 2009.[1] (R4, tab 15 at 3-6)

7. The Kentucky Transportation Cabinet releases the KAPI price monthly (app. supp. R4, *passim*).

8. In response to appellant's 17 September 2012 letter, the government sent a letter, dated 19 October 2012, denying appellant's request for equitable adjustment (R4, tab 16).

9. Certified sent a second letter, dated 22 March 2013, to the CO with the subject line "Request for Contracting Officer's Decision." The letter stated:

---

[1] There is no adjustment claimed for the month of March 2007 (R4, tab 15).

On September 17, 2012, Certified requested an equitable adjustment to the Contract to compensate for the increased cost of performance resulting from the unprecedented increase in the price of Liquid Asphalt.... By letter dated October 19, 2012, the Department of the Army denied Certified's request for equitable adjustment.

....

...Certified submits that the Department's denial of Claim for Equitable Adjustment was improper and requests a decision by the Contracting Officer that it is entitled to the $839,052.31 difference between petroleum costs at the time the contract was bid, and the [sic] at the time of production and installation, calculated using the Kentucky Asphalt Index.

(R4, tab 17 at 1-2) The 22 March 2013 letter included the following certification, signed by Certified's president:

I certify that this claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which Certified believes the Government is liable; and that I am duly authorized to certify the claim on behalf of Certified.

(*Id.* at 2)

10. The CO issued a CO's final decision (COFD), by letter dated 31 May 2013, denying Certified's claim (R4, tab 18). Certified appealed the COFD to this Board by letter dated 16 July 2013 (R4, tab 19).

## DECISION

The government moves to dismiss "the portion of this appeal that pertains to 'additional expenses' incurred prior to March 22, 2007" arguing that "recovery for such expenses is barred under the [CDA's] six-year statute of limitations" (gov't mot. at 1). Appellant argues that only the portion of the claim that "accrued more than six years before its letter of September 17, 2012" is not within the Board's jurisdiction (app. resp. at 3 n.1).

4

The CDA's statute of limitation requires that a contractor's claim against the government "shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). As of January 2005, FAR 33.201 defined accrual of a claim in pertinent part as: "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known."

Where a claim is inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages, the doctrine of continuing claim will apply. *Gray Personnel, Inc.*, ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,476-77 (citing *Friedman v. United States*, 159 Ct. Cl. 1 (1962)). In the instance of a continuing claim "the statute of limitations runs on each distinct liability-creating event having its own associated damages." *Fluor Corporation*, ASBCA No. 57852, 14-1 BCA ¶ 35,472 at 173,930.

Appellant's claim was inherently susceptible to being broken down into a series of distinct events, namely the monthly release of the KAPI and, therefore, the continuing claim doctrine applies. Appellant's price adjustment claim is founded on the comparative price of asphalt at the time of asphalt production against the price of asphalt at the time of the bid, where the prices are established by the KAPI (SOF ¶¶ 4, 6). Each release of the KAPI for a particular month of Certified's performance was an independent and distinct event having its own associated damages. For each month, appellant determined whether a price adjustment was allegedly owed and calculated damages independently for each month (SOF ¶ 6). The government's potential liability could not be fixed until the Kentucky Transportation Cabinet released the KAPI each month. Accordingly, appellant's claim was a continuing claim and the statute of limitations runs distinctly on each month's release of the KAPI between January 2006 through December 2009.

The government argues that:

> [B]ecause the time between the dates on which...portions of the claim accrued and March 22, 2013, the date appellant submitted the claim, was more than the CDA's six-year statute of limitations allows, the Board must dismiss the portions of the appeal related to claims which accrued prior to March 22, 2007.

(Gov't mot. at 5-6) Appellant, in its response, does not refute the argument that portions of its claim accrued each month (app. resp. at 2). However, appellant argues that its claims were first submitted to the CO by its 17 September 2012 letter (app. resp. at 3).

5

The CDA does not define the term claim; however, the FAR defines a claim as:

> [A] written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief as arising under or relating to the contract.

FAR 2.101. It is established that while a claim need not be submitted in any particular form or use any particular wording, a proper CDA claim must include "(1) adequate notice of the basis and amount of a claim and (2) a request for a final decision." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010). The request for a final decision can be explicit or implied. *See James M. Ellett Construction Co. v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996); *see also Environmental Safety Consultants, Inc.*, ASBCA No. 54995, 06-1 BCA ¶ 33,230 at 164,666 (holding that the contractor impliedly requested a CO's decision when it resubmitted its REA with an unsigned CDA certification where the amount in dispute was less than $100,000). Additionally, claims over $100,000 must be certified in accordance with 41 U.S.C. § 7103(b)(1). *TMS Envirocon, Inc.*, ASBCA No. 57286, 12-2 BCA ¶ 35,084 at 172,296. "We employ a common sense analysis in evaluating on a case by case basis whether a demand constitutes an effective claim." *Zafer Taahhut Insaat ve Ticaret A.S.*, ASBCA No. 56770, 11-2 BCA ¶ 34,841 at 171,391 (citing *Transamerica Insurance Corp. v. United States*, 973 F.2d 1572, 1579 (Fed. Cir. 1992)).

Appellant's 17 September 2012 letter was not a claim but was in fact an REA. The 17 September 2012 letter failed to request a CO's decision, a foundational requirement for any contractor claim. *See Maropakis*, 609 F.3d at 1328. At no point did Certified explicitly request a COFD and nothing in the letter implied that a request for a COFD was being made. The 17 September 2012 letter consistently referenced that it was an REA. (SOF ¶ 4) Furthermore, appellant's letter was not certified as a CDA claim but was certified in accordance with DFARS 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (MAR 1998) (SOF ¶ 5). The contents of the 17 September 2012 letter is wholly consistent with the submission of an REA and, therefore, there is nothing to imply a request for a COFD. The totality of the record further supports the conclusion that when appellant submitted its 17 September 2012 letter, it intended to submit an REA. The CO treated the 17 September letter as an REA when it denied it rather than issuing a COFD, and Certified did not object (SOF ¶ 8). In fact, at all points after the submission of the 17 September 2012 letter, Certified consistently refers to and treats the letter as an REA, not a claim. The 22 March 2013 letter referenced the 17 September 2012 letter and characterized it as an REA (SOF ¶ 9) and appellant's complaint refers to the 17 September 2012 letter as an REA (compl. ¶ 10). Appellant's first attempt to characterize the 17 September

6

2012 letter as a claim occurred only after the government filed its partial motion to dismiss (app. resp. at 3). However, despite its recent assertions to the contrary, appellant did not submit a claim until 22 March 2013 when it converted the 17 September 2012 REA to a CDA claim by providing a CDA certification and requesting a COFD (SOF ¶ 9).

As appellant did not submit a claim until 22 March 2013, the portion of appellant's claim accruing prior to 22 March 2007 was not submitted to the CO within six years after accrual. Therefore, we have no jurisdiction to consider that portion of appellant's claim. *See* 41 U.S.C. § 7103(a)(4)(A).

CONCLUSION

The government's partial motion to dismiss the portion of appellant's claim accruing prior to 22 March 2007 is granted. The appeal is dismissed for lack of jurisdiction to the extent it relates to alleged costs incurred between January 2006 and March 2007. The Board has jurisdiction of the appeal as it relates to costs incurred after March 2007.[2]

Dated: 8 July 2014

PETER D. TING
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL T. PAUL
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

---

[2] The Board does not consider what day of the month the claim accrued because appellant does not claim an adjustment for the month of March 2007 (SOF ¶ 6 n.1).

7

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58782, Appeal of Certified Construction Company of Kentucky, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
